Judge Pauley

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



07 CV    7357

| | |
|---|---|
| U.S. TRUST COMPANY, N.A., | Civil Action No. |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| ROBERT S. STOLAR, | AUG 1 7 2007 |
| Defendant. | U.S.D.C. S.D. N.Y. CASHIERS |

United States Trust Company, N.A. ("U.S. Trust"), by its undersigned attorneys,

hereby brings the following Complaint for injunctive relief against Defendant Robert S. Stolar

("Stolar" or "Defendant") for (i) breach of contract; (ii) conversion and misappropriation of trade

secrets, customer lists, and confidential business information; (iii) breach of the duty of loyalty

and fiduciary duty; (iv) unfair competition; and (v) tortious interference with economic

advantage, and in support thereof avers as follows:

## I. PARTIES

1.      U.S. Trust is an investment management firm organized and existing

under the laws of Delaware and maintaining its principal place of business in New York, New

York. U.S. Trust transacts business in this judicial district.

2.      Defendant Stolar was formerly employed by U.S. Trust as the Principal of

the Western Region of its Multi-Family Office ("MFO"). Upon information and belief, Stolar is

a resident and citizen of the State of New Jersey.

## II. JURISDICTION AND VENUE

3.      Jurisdiction exists by virtue of diversity of citizenship, 28 U.S.C. §1332.

The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000), exclusive of

interest and costs, against the Defendant. Venue is proper in this judicial district as the conduct

complained of herein took place in this judicial district.

## III. FACTS COMMON TO ALL COUNTS

4.      U.S. Trust is a financial services company that offers fully integrated

wealth management solutions, including investment management, planning services, and trust

services.

5.      At all relevant times, Stolar was the Principal for U.S. Trust's MFO for the

Western Region. MFO teams are devoted to servicing affluent and ultra-high net worth clients.

In 2006, U.S. Trust's Western Region MFO - supervised by the Defendant - generated

approximately $10 million in revenues for U.S. Trust.

6.      As a condition of his continuing employment with U.S Trust, Defendant

Stolar signed an "Employment Agreement Regarding Confidentiality and Non-Solicitation,"

wherein he agreed, in part, not to solicit clients or employees for one year after the termination of

his employment and not to use or disclose any confidential and proprietary information,

including client information:

> 2. Non-Solicitation of Client and Employees.
>
> To further protect Confidential and Proprietary Information of U.S.
> Trust and the goodwill associated with the client and prospective
> client relationships of U.S. Trust, you agree that:
>
> a) during your employment with U.S. Trust, and for a period of
> twelve (12) months following termination of your employment with

- 2 -

#1218951 v1
104768-60458

U.S. Trust, you will not, directly or indirectly, solicit or induce existing or prospective U.S. Trust clients, to whom you provided services or with respect to whom you devoted efforts seeking to provide such services, to transfer or divert business from U.S. Trust or otherwise to avoid, diminish or discontinue a relationship with U.S. Trust and

b) during your employment with U.S. Trust, and for a period of twelve (12) months following termination of your employment with U.S. Trust, you will not, directly or indirectly, solicit, induce or encourage any U.S. Trust employee to terminate employment with U.S. Trust to join a business competitive with the businesses of U.S. Trust.

(See Exhibit "A").

7.    In this Agreement, Stolar also agreed to return to maintain the

confidentiality of all U.S Trust client and business information and to return all such information

immediately upon his termination of employment:

1. Confidential and Proprietary Information.

In connection with your employment by U.S. Trust you will have (and you hereby acknowledge you have) access to sensitive, non-public information of U.S. Trust and its clients including but not limited to: a) client-related information (i.e. client names, client contact information, client lists, client account contents and statements, investment, estate and taxation strategies, current and historical investment performance data, etc.) b) employee, vendor and independent contractor information (i.e. names and contact information, personal and financial information, services, compensation, rate structures etc.) and c) business information of U.S. Trust (i.e. financial performance, marketing, sales, product and regulatory information etc.) (collectively "Confidential and Proprietary Information"). You agree that you will not disclose or permit or facilitate disclosure of Confidential and Proprietary Information to persons outside U.S. Trust or use such information for purposes other than as specifically authorized by U.S. Trust for purposes intended by U.S. Trust.

**********

3. Return of Records.

- 3 -

#1218951 v1
104768-60458

> Immediately upon termination of your employment with U.S. Trust, you agree to return all Confidential and Proprietary Information in your possession, custody and control to U.S. Trust and provide a sworn certification attesting that you have done so.

(See Exhibit "A").

8.      Although the merits of this dispute are arbitrable before the American Arbitration Association, Stolar explicitly consented to the jurisdiction of this Court for any temporary or preliminary injunction action brought by U.S. Trust in the event he breached the terms of his agreement.  He also agreed to expedited discovery, including depositions, in connection with any application for temporary or preliminary injunctive relief.  Paragraphs 4 and 5 of Stolar's Agreement state, in part:

> 4. Arbitration.
>
> . . . . You further agree that, notwithstanding your agreement to arbitrate, in connection with any breach of threatened breach of this Agreement, U.S. Trust may proceed first to any federal or state court of competent jurisdiction to seek temporary or preliminary injunctive relief to enforce the provisions of this Agreement in aid or support of the arbitration proceeding.
>
> 5.   Discovery.
>
> You agree that should U.S. Trust seek temporary or preliminary injunctive relief with regard to the breach or threatened breach by you of this Agreement, U.S. Trust shall be entitled to expedited discovery including depositions, whether or not laws of the jurisdiction or applicable arbitration rules provide for such expedited discovery.

(See Exhibit "A").

9.      In addition to executing the above referenced agreements, Stolar also agreed to maintain the confidentiality of U.S. Trust's business and client information pursuant to the U.S. Trust Code of Business Ethics.  (See Exhibit "B").

- 4 -

10.     On June 28, 2007, Defendant Stolar resigned his employment from U.S. Trust without any advance notice to commence employment at Morgan Stanley DW, Inc. ("Morgan Stanley"), a direct competitor of U.S. Trust. Upon information and belief, the Defendant is working in New York City. Within two weeks of Stolar's sudden resignation, four other U.S. Trust employees who had worked with or for Stolar in U.S. Trust's MFO resigned without any advance notice to join Morgan Stanley. Two of these employees, Mary Davey and Christine Guidera, resigned virtually simultaneously with Stolar. The other two, Morris Noble and Stacey Pugsley, resigned within approximately two weeks of Stolar's resignation.

11.     As a result of these mass departures, the Western Region MFO office for which Stolar was responsible and had supervised was decimated.

12.     On or about April 12, 2007, and prior to his resignation from U.S. Trust, Stolar e-mailed to Morgan Stanley a U.S. Trust Emerging Markets presentation. This presentation was proprietary to U.S. Trust, was in no way intended for any competitor of U.S. Trust, and contains, among other things, model client asset allocations.

13.     U.S. Trust further alleges, upon information and belief, that Defendant Stolar solicited, either directly or indirectly, U.S. Trust employees to work at Morgan Stanley.

14.     U.S. Trust further alleges, upon information and belief, that Defendant Stolar has wrongfully retained U.S. Trust records and information in violation of his contractual and other obligations to U.S. Trust.

15.     U.S. Trust alleges, upon information and belief, that Defendant Stolar has violated and/or intends to violate his obligations to U.S. Trust by inducing or attempting to induce customers of U.S. Trust to discontinue their business with U.S. Trust and do business with Morgan Stanley.

- 5 -

16.    U.S. Trust also alleges, upon information and belief, that the Defendant Stolar has engaged in other acts which constitute unfair competition, and are in violation of Defendant's contractual, trade secret, fiduciary, internal privacy policies as mandated by federal and state law, and/or other legal obligations to U.S. Trust (see generally Declaration of Henry Fischel-Bock).

## COUNT I
## INJUNCTIVE RELIEF

17.    The allegations of Paragraphs 1 through 16 are incorporated by reference herein with the same force and effect as if set forth in full below.

18.    By virtue of the foregoing, U.S. Trust has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against the Defendant.

19.    Unless the Defendant is preliminarily enjoined from violating the terms of his Agreement and U.S. Trust policies, misappropriating U.S. Trust's trade secrets, and engaging in other acts of unfair competition, U.S. Trust will be irreparably harmed by:

(a)    Disclosure of trade secrets, customer lists, and other confidential information which are solely the property of U.S. Trust and its clients;

(b)    Loss of confidentiality of clients' records and financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation;

(c)    Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

- 6 -

(d) Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

20. U.S. Trust has no adequate remedy at law.

WHEREFORE, U.S. Trust respectfully requests that:

(a) A Preliminary Injunction Order issue immediately, enjoining Defendant, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of Morgan Stanley, from:

(i)    Soliciting the business of any clients or prospective clients of U.S. Trust whom Defendant serviced or devoted efforts seeking to provide such services (excluding members of Defendant's family);

(ii)    Soliciting for hire any employees of U.S. Trust;

(iii)    Using, disclosing, or transmitting for any purpose, any records, documents, or information relating in any way to the clients, business or marketing strategies, or business operations of U.S. Trust, whether in original, copied, computerized, handwritten, or any other form (hereafter the "Records and Information");

(iv)    Retaining, in any form, including without limitation original, copied, computerized, handwritten or any other form, any Records and Information;

- 7 -

(v)    Any and all other such acts as this Court deems appropriate for injunctive relief.

## COUNT II
## BREACH OF CONTRACT

21.    The allegations of Paragraphs 1 through 20 are incorporated herein by reference with the same force and effect as if set forth in full below.

22.    Upon information and belief, Defendant has violated and/or intends to violate the provisions of his agreement attached hereto as Exhibit "A".

23.    As a consequence of the foregoing, U.S. Trust has suffered and will continue to suffer irreparable harm and loss.

## COUNT III
## CONVERSION AND MISAPPROPRIATION OF TRADE SECRETS

24.    The allegations of Paragraphs 1 through 23 are incorporated herein by reference with the same force and effect as if set forth in full below.

25.    The books and records of U.S. Trust, and the confidential information contained therein, are trade secrets subject to protection under the laws of New York.

26.    This information derives independent economic value by not being accessible, through proper means, to competitors who can profit from its use or disclosure.

27.    U.S. Trust has taken reasonable measures under the circumstances to maintain the secrecy of this information.

28.    The foregoing conduct of the Defendant, upon information and belief, constitutes a misappropriation of U.S. Trust's confidential, trade secret information.

- 8 -

29.    As a consequence of the foregoing, U.S. Trust has suffered and will continue to suffer irreparable harm and loss.

## COUNT IV
## BREACH OF THE DUTY OF LOYALTY AND BREACH OF FIDUCIARY DUTY

30.    The allegations of Paragraphs 1 through 28 are incorporated herein by reference with the same force and effect as if set forth in full below.

31.    Upon information and belief, Defendant has violated his duty of loyalty and his fiduciary duty to U.S. Trust including, without limitation, by violating his contractual and trade secret obligations to U.S. Trust, and by engaging in other actions contrary to the interests of U.S. Trust.

32.    As a consequence of the foregoing, U.S. Trust has suffered and will continue to suffer irreparable harm and loss.

## COUNT V
## UNFAIR COMPETITION

33.    The allegations of Paragraphs 1 through 32 are incorporated herein by reference with the same force and effect as if set forth in full below.

34.    Upon information and belief, the Defendant has engaged in acts of unfair competition.

35.    As a consequence of the foregoing, U.S. Trust has suffered and will continue to suffer irreparable harm and loss.

## COUNT VI
## TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE

36.    The allegations of Paragraphs 1 through 35 are incorporated herein by reference with the same force and effect as if set forth in full below.

- 9 -

37.     Upon information and belief, Defendant has tortiously interfered with the economic advantage of U.S. Trust by, inter alia, diverting the clients of U.S. Trust to a competing entity, depriving U.S. Trust of its trade secrets and confidential and proprietary information, and interfering with and violating the contract rights of U.S. Trust.

38.     The Defendant acted without privilege or justification.

39.     As a consequence of the foregoing, U.S. Trust has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing acts complained of in Counts II, III, IV, V and VI, U.S. Trust demands judgment in its favor and against Defendant for and preliminary injunctive relief pending expedited arbitration hearings on the merits before a duly appointed panel of arbitrators to be held pursuant to Rules of the American Arbitration Association.

Dated:  August 17, 2007
    New York, New York

                    **GIBBONS P.C.**
                    One Pennsylvania Plaza, 37th Floor
                    New York, NY 10119-3701
                    (212) 613-2000
                    Attorneys for Plaintiff
                    U.S. Trust Company, N.A.

                    _____
                    Mark W. Stoutenburg

Of Counsel:

Christopher C. Coss
Thomas J. Momjian
Coss & Momjian, LLP
111 Presidential Blvd., Suite 233
Bala Cynwyd, Pennsylvania 19004
(610) 667-6912

- 10 -

# EXHIBIT A

**Employment Agreement Regarding**
**Confidentiality and Non-Solicitation**

In consideration of your participation in The Charles Schwab Corporation Long Term Incentive Plan and The Charles Schwab Corporation 2004 Stock Incentive Plan, as well as your employment by U.S. Trust Corporation and its subsidiaries ("U.S. Trust") and in consideration of the compensation, resources, benefits and the trade secrets and proprietary information that will be provided to you by U.S. Trust in connection with your employment, you agree as follows:

1. **Confidential and Proprietary Information.**

In connection with your employment by U.S. Trust you will have (and you hereby acknowledge you have) access to sensitive, non-public information of U.S. Trust and its clients including, but not limited to: a) client-related information (i.e. client names, client contact information, client lists, client account contents and statements, investment, estate and taxation strategies, current and historical investment performance data, etc.) b) employee, vendor and independent contractor information (i.e. names and contact information, personal and financial information, services, compensation, rate structures etc.) and c) business information of U.S. Trust (i.e. financial performance, marketing, sales, product and regulatory information etc.) (collectively "Confidential and Proprietary Information"). You agree that you will not disclose or permit or facilitate disclosure of Confidential and Proprietary Information to persons outside U.S. Trust or use such information for purposes other than as specifically authorized by U.S. Trust for purposes intended by U.S. Trust.

2. **Non-Solicitation of Clients and Employees.**

To further protect Confidential and Proprietary Information of U.S. Trust and the good will associated with the client and prospective client relationships of U. S. Trust, you agree that:

> a) during your employment with U.S. Trust, and for a period of twelve (12) months following termination of your employment with U.S. Trust, you will not, directly or indirectly, solicit or induce existing or prospective U.S. Trust clients, to whom you provided services or with respect to whom you devoted efforts seeking to provide such services, to transfer or divert business from U.S. Trust or otherwise to avoid, diminish or discontinue a relationship with U.S. Trust and
>
> b) during your employment with U.S. Trust, and for a period of twelve (12) months following termination of your employment with U.S. Trust, you will not, directly or indirectly, solicit, induce or encourage any U.S. Trust employee to terminate employment with U.S. Trust to join a business competitive with the businesses of U.S. Trust.

1247272.1

### 3. Return of Records

Immediately upon termination of your employment with U.S. Trust, you agree to return all Confidential and Proprietary Information in your possession, custody and control to U.S. Trust and provide a sworn certification attesting that you have done so.

### 4. Arbitration

Any dispute or claim arising out of, based upon or relating to this Agreement will be settled and finally determined by arbitration. Arbitration will be conducted before the American Arbitration Association. You further agree that, notwithstanding your agreement to arbitrate, in connection any breach or threatened breach of this Agreement, U.S. Trust may proceed first to any federal or state court of competent jurisdiction to seek temporary or preliminary injunctive relief to enforce the provisions of this Agreement in aid or support of the arbitration proceeding. An application before a court for injunctive relief shall not be construed as a waiver, by either party, of the right or obligation of the parties to resolve claims through arbitration. In the event of a breach by you of Section 2a) or 2b) of this Agreement, you agree that, in addition to all other legal and equitable remedies available to U.S. Trust, U.S. Trust shall be entitled to, as liquidated damages, and not as a penalty, an amount equal to the greater of a) the revenue received by U.S. Trust during the twelve month period immediately proceeding the termination of your employment with U.S. Trust from each client you served at U.S. Trust who has transferred or diverted business from U.S. Trust to you or to any entity with whom you have become associated or b) the revenue received by you or by any entity with whom you may be associated for the twelve month period following termination of your employment with U.S. Trust from each client you served at U.S. Trust.

### 5. Discovery

You agree that should U.S. Trust seek temporary or preliminary injunctive relief with regard to the breach or threatened breach by you of this Agreement, U.S. Trust shall be entitled to expedited discovery including depositions, whether or not the laws of the jurisdiction or applicable arbitration rules provide for such expedited discovery.

### 6. Choice of Law

This agreement shall be governed by and construed in accordance with the laws of the State of New York without reference to the principles of conflicts of law.

### 7. Severability

If any provision of this Agreement is found to be invalid or unenforceable, that provision or portion thereof shall be enforced to the maximum extent possible, and the remaining provisions or portions thereof shall remain in full force and effect.

### 8. Attorneys Fees and Costs

In the event that a party to this Agreement brings an action to enforce any provisions of the Agreement, the prevailing party shall be entitled to its attorneys' fees and costs incurred to enforce such claims.

### 9.  Reconciliation with Other Agreements

This Agreement is intended to be supplemental to, and not supersede any employment agreement or other agreement that you may have entered into previously with U.S. Trust.  If a provision in this Agreement conflicts with or is inconsistent with any provision in such previous agreement, you agree that the provision that is most favorable to U.S. Trust (in U.S. Trust's sole determination) shall control.

Nothing herein shall be deemed to waive and/or release you from your obligations to comply with the U.S. Trust Corporation Code of Business Conduct and Ethics and all other applicable Policies and Procedures of U.S. Trust, familiarity with which you hereby acknowledge.  Further, nothing in this Agreement changes your "at will" employment status, and that either you or U.S. Trust may end the employment relationship at any time, with or without notice, for any reason or for no reason at all.

_9/7/04_

Date

_____

Employee Signature

_Robert Stoler_

Employee Name

_____        _____

Date                                                            U.S. Trust Entity Name

_____

By:

Its:

1247272.1

# EXHIBIT B

For Internal Use Only

# U.S. TRUST CORPORATION
# CODE OF BUSINESS CONDUCT AND ETHICS

### Effective November 7, 2006

### MISSION STATEMENT

To be an organization that directly impacts and influences the future of our clients,
their children and grandchildren.

Our success will be determined by delivering top tier performance and innovation that is unbiased
and in the best interest of our clients, our colleagues and our investors.

### OUR VISION

Be the premier wealth management and investment firm in the nation.

### OUR VALUES

Be fair, empathetic and responsive in serving our clients.
Respect and reinforce our fellow employees and the power of teamwork.
Strive relentlessly to innovate what we do and how we do it.
Always earn and be worthy of our clients' trust.

## Confidentiality of Information

### Confidentiality of Client Information

As a financial services firm, we have particular responsibilities for safeguarding the information of our clients and the proprietary information of our Firm. You should be mindful of this obligation when you use the telephone, fax, electronic mail, and other means of storing and transmitting information. You should not discuss confidential information in public areas where it can be overheard, read confidential documents in public places, nor leave or discard confidential documents where they can be retrieved by others. You should not discuss the affairs of the Firm with anyone except on a need-to-know basis. This includes family members and anyone at any other firm you may be associated with or transact business with on behalf of U.S. Trust. *If you have questions, you should contact the Corporate Compliance Division or the Office of the General Counsel.*

### Privacy of Client Information

U.S. Trust is committed to safeguarding its clients' privacy. We do not sell any personally identifiable client information. Sharing of such information with third parties is limited to situations related to the processing and servicing of client accounts, and to specifically delineated exceptions in the applicable privacy law. We share information with our affiliates as allowed by applicable law. You must be familiar with the Firm's Privacy Policy and with the procedural and systemic safeguards we maintain to protect this information and must report any breaches of these safeguards in accordance with the Firm's procedures.

Within U.S. Trust, information concerning the identity of clients and their transactions and accounts must always be handled with care. Such information may not be disclosed to persons within the Firm unless they need to know it in order to fulfill their responsibilities to the Firm.

*If you have questions regarding the appropriateness of any situation involving information handling, you should review the Firm's Privacy Policy as well as the Information Security Policy or contact your supervisor or the Privacy Officer.*

### Protection and Use of Proprietary Information of the Firm

You have the responsibility to safeguard proprietary information of the Firm. Proprietary information includes but is not limited to intellectual property (copyrights, trademarks or patents or trade secrets), particular know-how (business or organizational designs, or business, marketing or service plans or ideas) and sensitive information about the Firm (databases, records, client-related information, salary information or unpublished financial reports). *Any suspected breach of this obligation should be reported immediately to the Corporate Compliance Division and, if you are an employee, to your supervisor.*

THE CODE OF BUSINESS CONDUCT AND ETHICS

U.S. Trust Corporation

For Internal Use Only

## Protection and Use of Physical Assets of the Firm

You are obligated to protect the Firm's assets and ensure their efficient use. Theft, carelessness and waste have a direct impact on the Firm. Firm equipment should not be used for non-Firm business, though incidental personal use may be permitted. All business resources and equipment provided to you by the Firm remain the property of U.S. Trust and should be used for its benefit. The Firm has the right to examine your use of this property, including the contents of the desktop and/or laptop computer assigned to you, your use of all communications devices and any furniture or filing facilities used by you. Under no circumstances may you use the Firm's systems to view, store or send unlawful, offensive or other inappropriate materials. These standards apply to all types of electronic and non-electronic communications, including, but not limited to, telephones, voice-mail, pagers, fax machines, e-mail, instant messaging, text messaging and on-line services. You should have no expectation of privacy or confidentiality regarding your activities while on the premises of, or when using the facilities or systems of, U.S. Trust even though you may use security features such as personal passwords. *Any suspected breach of this obligation should be reported immediately to the Corporate Compliance Division and, if you are an employee, to your supervisor.*

## Monitoring of Communications

All electronic communications relating to Firm business must be made through the Firm's network unless the Office of the General Counsel has expressly authorized another means of communication. All means of communications are the property of the Firm and are subject to monitoring and surveillance.

Business Conduct and Ethics
BC&E Form Details

**Employee** Robert Stolar          **Form Version:** 2 09/18/2006

Status:
Accepted
By System

■ Section 1. Managers

Manager Henry Fischel-Bock          Policy Committee Member Frances Aldrich Sevilla-Sacasa

Section 2. Questionnaire

| | |
|---|---|
| No | 1. Are you seeking approval to hold a position, whether paid or unpaid, with any organization other than U.S. Trust? |
| No | 2. Are you seeking approval to make a significant investment in a company that competes with U.S. Trust or in an entity that does business with U.S. Trust? (more) |
| No | 3. Are you seeking approval to borrow money from a client or employee of U.S. Trust? |
| No | 4. Are you seeking approval to accept a corporate or fiduciary appointment (including authority to act as Power of Attorney, Trustee, Executor or Guardian) for yourself personally? (more) |
| No | 5. Are you seeking approval to engage in significant political activity, seek or accept public office or make a political contribution on behalf of U.S. Trust? (more) |
| No | 6. Are you seeking approval to give or receive a gift in excess of $100? (more) |
| No | 7. Have you made any gifts, payments of money, or provided anything of value, directly or indirectly, to or for the benefit of anyone related to a union or a union plan? Please exclude gifts, payments or anything of value that has been disclosed previously. |
| No | 8. Were there any instances in which a union-related recipient received preferential treatment (including fee concessions, advantageous terms on a loan or investment)? Please exclude instances that have been disclosed previously. |
| No | 9. Are you aware of any other personal circumstances that would conflict, or might conflict, with the interests of U.S. Trust or its clients? |
| No | 10. Within the past ten years has any credit obligation for which you personally (or any organization, including any broker/dealer during any time while you exercised control over such organization) were responsible for payment, been referred to a professional debt-collecting firm for collection thereof? |
| No | 11. Has your authorization to act as an attorney, accountant or federal contractor ever been revoked or suspended? |
| No | 12. Have you ever been convicted of or plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any felony? |
| No | 13. Based upon activities that occurred while you exercised control over it, has an organization ever been convicted of or plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any felony? |
| No | 14. Based upon activities that occurred while you exercised control over it, has an organization ever been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to a misdemeanor specified in the question above? |
| | **Has the U.S. Securities and Exchange Commission or the Commodity Futures Trading Commission ever --** |
| No | 15.   -- found you to have made a false statement or omission? |
| No | 16.   -- found you to have been a cause of an investment-related business having its |

authorization to do business denied, suspended, revoked or restricted?

No    17.    -- entered an order against you in connection with investment–related activity?

No    18.    -- ever imposed a civil money penalty on you, or ordered you to cease and desist from any activity?

**Has any other Federal regulatory agency or any state regulatory agency or foreign financial regulatory authority ever--**

No    19.    -- found you to have made a false statement or omission or been dishonest, unfair or unethical?

No    20.    -- found you to have been involved in a violation of investment-related regulations or statues?

No    21.    -- found you to have been a cause of an investment-related business having its authorization to do business denied, suspended, revoked or restricted?

No    22.    -- entered an order against you in connection with investment-related activity?

No    23.    -- denied, suspended or revoked your registration or license, or otherwise, by order, prevented you from associating with an investment-related business or restricted your activities?

**Has any self-regulatory organization or commodities exchange ever:**

No    24.    -- found you to have made a false statement or omission?

No    25.    -- found you to have been involved in a violation of its rules (other than a violation designated as a "minor rule violation" under a plan approved by the U.S. Securities and Exchange Commission)?

No    26.    -- found you to have been a cause of an investment-related business having its authorization to do business denied, suspended, revoked or restricted?

No    27.    -- disciplined you by expelling or suspending you from membership, barring or suspending your association with its members, or restricting your activities?

**Have you been notified, in writing, that you are now the subject of:**

No    28.    -- any regulatory complaint or proceeding that could result in a "yes" answer to any question above?

No    29.    -- any investigation that could result in a "yes" answer to any question above?

**Has any domestic or foreign court**

No    30.    -- ever enjoined you in connection with any investment-related activity?

No    31.    -- ever found that you were involved in a violation of any investment-related statute(s) or regulation(s)?

No    32.    -- dismissed, pursuant to a settlement agreement, an investment-related civil action brought against you by a state or foreign financial regulatory authority?

No    33.    -- are you named in any pending investment-related civil action that could result in a "yes" answer to any of the 3 preceding questions?

**Have you ever been named as a respondent/defendant in an investment-related, consumer-initiated arbitration or civil litigation which alleged that you were involved in one or more sales practice violations and which:**

No    34.    -- is still pending?

No    35.    -- resulted in an arbitration award or civil judgment against you, regardless of amount?

No    36.    -- was settled for an amount of $10,000 or more?

No    37. Have you ever been the subject of an investment-related, consumer-initiated written complaint, not otherwise reported in any of the 3 preceding questions, which alleged that you were involved in one or more sales practice violations and which complaint was settled for an amount of $10,000 or more?

**Within the past twenty-four (24) months, have you been the subject of an**

investment-related, consumer-initiated written complaint, not otherwise reported above, which

| | | |
|---|---|---|
| No | 38. | -- alleged that you were involved in one or more sales practice violations and contained a claim for compensatory damages of $5,000 or more (if no damage amount is alleged, the complaint must be reported unless the firm has made a good faith determination that the damages from the alleged conduct would be less than $5,000)? |
| No | 39. | -- alleged that you were involved in forgery, theft, misappropriation or conversion of funds or securities? |

**Have you ever voluntarily resigned, been discharged or permitted to resign after allegations were made that accused you of:**

| | | |
|---|---|---|
| No | 40. | -- violating investment-related statutes, regulations, rules or industry standards of conduct? |
| No | 41. | -- fraud or the wrongful taking of property? |
| No | 42. | -- failure to supervise in connection with investment-related statutes, regulations, rules or industry standards of conduct? |

**Within the past 10 years:**

| | | |
|---|---|---|
| No | 43. | -- have you made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition? |
| No | 44. | --based upon events that occurred while you exercised control over it, has an organization made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition? |
| No | 45. | --based upon events that occurred while you exercised control over it, has a broker or dealer been the subject of an involuntary bankruptcy petition, or had a trustee appointed, or had a direct payment procedure initiated under the Securities Investor Protection Act? |
| No | 46. | Has a bonding company ever denied, paid out on, or revoked a bond for you? |
| No | 47. | Do you have any unsatisfied judgments or liens against you? |

**Do you certify that:**

| | | |
|---|---|---|
| Yes | 48. | -- all of the information you have provided in response to the questions on this BC&E application is current and correct? |
| Yes | 49. | -- you have received, read, understand, and will abide by the provisions of the Code of Business Conduct and Ethics of U.S. Trust Corporation (the "Policy"), including the Information Asset Protection Policy (for those employees who have signed it), the U.S. Trust Compliance Manual and all other documents referenced in the Policy? |

▪ Section 3. Investment Accounts

| Institution Name | Account Name | Account Number | Exemption Obtained? |
|---|---|---|---|
| Charles Schwab & Co. | *REDACTED* | | N/A |
| Charles Schwab & Co. | | | N/A |