# EXHIBIT A

## Employment Agreement Regarding
## Confidentiality and Non-Solicitation

In consideration of your participation in The Charles Schwab Corporation Long Term Incentive Plan and The Charles Schwab Corporation 2004 Stock Incentive Plan, as well as your employment by U.S. Trust Corporation and its subsidiaries ("U.S. Trust") and in consideration of the compensation, resources, benefits and the trade secrets and proprietary information that will be provided to you by U.S. Trust in connection with your employment, you agree as follows:

1. **Confidential and Proprietary Information.**

In connection with your employment by U.S. Trust you will have (and you hereby acknowledge you have) access to sensitive, non-public information of U.S. Trust and its clients including, but not limited to: a) client-related information (i.e. client names, client contact information, client lists, client account contents and statements, investment, estate and taxation strategies, current and historical investment performance data, etc.) b) employee, vendor and independent contractor information (i.e. names and contact information, personal and financial information, services, compensation, rate structures etc.) and c) business information of U.S. Trust (i.e. financial performance, marketing, sales, product and regulatory information etc.) (collectively "Confidential and Proprietary Information"). You agree that you will not disclose or permit or facilitate disclosure of Confidential and Proprietary Information to persons outside U.S. Trust or use such information for purposes other than as specifically authorized by U.S. Trust for purposes intended by U.S. Trust.

2. **Non-Solicitation of Clients and Employees.**

To further protect Confidential and Proprietary Information of U.S. Trust and the good will associated with the client and prospective client relationships of U.S. Trust, you agree that:

    a) during your employment with U.S. Trust, and for a period of twelve (12) months following termination of your employment with U.S. Trust, you will not, directly or indirectly, solicit or induce existing or prospective U.S. Trust clients, to whom you provided services or with respect to whom you devoted efforts seeking to provide such services, to transfer or divert business from U.S. Trust or otherwise to avoid, diminish or discontinue a relationship with U.S. Trust and

    b) during your employment with U.S. Trust, and for a period of twelve (12) months following termination of your employment with U.S. Trust, you will not, directly or indirectly, solicit, induce or encourage any U.S. Trust employee to terminate employment with U.S. Trust to join a business competitive with the businesses of U.S. Trust.

1247272.1

### 3. Return of Records

Immediately upon termination of your employment with U.S. Trust, you agree to return all Confidential and Proprietary Information in your possession, custody and control to U.S. Trust and provide a sworn certification attesting that you have done so.

### 4. Arbitration

Any dispute or claim arising out of, based upon or relating to this Agreement will be settled and finally determined by arbitration. Arbitration will be conducted before the American Arbitration Association. You further agree that, notwithstanding your agreement to arbitrate, in connection any breach or threatened breach of this Agreement, U.S. Trust may proceed first to any federal or state court of competent jurisdiction to seek temporary or preliminary injunctive relief to enforce the provisions of this Agreement in aid or support of the arbitration proceeding. An application before a court for injunctive relief shall not be construed as a waiver, by either party, of the right or obligation of the parties to resolve claims through arbitration. In the event of a breach by you of Section 2a) or 2b) of this Agreement, you agree that, in addition to all other legal and equitable remedies available to U.S. Trust, U.S. Trust shall be entitled to, as liquidated damages, and not as a penalty, an amount equal to the greater of a) the revenue received by U.S. Trust during the twelve month period immediately proceeding the termination of your employment with U.S. Trust from each client you served at U.S. Trust who has transferred or diverted business from U.S. Trust to you or to any entity with whom you have become associated or b) the revenue received by you or by any entity with whom you may be associated for the twelve month period following termination of your employment with U.S. Trust from each client you served at U.S. Trust.

### 5. Discovery

You agree that should U.S. Trust seek temporary or preliminary injunctive relief with regard to the breach or threatened breach by you of this Agreement, U.S. Trust shall be entitled to expedited discovery including depositions, whether or not the laws of the jurisdiction or applicable arbitration rules provide for such expedited discovery.

### 6. Choice of Law

This agreement shall be governed by and construed in accordance with the laws of the State of New York without reference to the principles of conflicts of law.

### 7. Severability

If any provision of this Agreement is found to be invalid or unenforceable, that provision or portion thereof shall be enforced to the maximum extent possible, and the remaining provisions or portions thereof shall remain in full force and effect.

### 8. Attorneys Fees and Costs

1247272.1

In the event that a party to this Agreement brings an action to enforce any provisions of the Agreement, the prevailing party shall be entitled to its attorneys' fees and costs incurred to enforce such claims.

### 9. Reconciliation with Other Agreements

This Agreement is intended to be supplemental to, and not supersede any employment agreement or other agreement that you may have entered into previously with U.S. Trust. If a provision in this Agreement conflicts with or is inconsistent with any provision in such previous agreement, you agree that the provision that is most favorable to U.S. Trust (in U.S. Trust's sole determination) shall control.

Nothing herein shall be deemed to waive and/or release you from your obligations to comply with the U.S. Trust Corporation Code of Business Conduct and Ethics and all other applicable Policies and Procedures of U.S. Trust, familiarity with which you hereby acknowledge. Further, nothing in this Agreement changes your "at will" employment status, and that either you or U.S. Trust may end the employment relationship at any time, with or without notice, for any reason or for no reason at all.

_9/7/04_
Date

_[signature]_
Employee Signature

_Robert Stoler_
Employee Name

_____
Date

_____
U.S. Trust Entity Name

_____
By:
Its:

12472721

# EXHIBIT B

Westlaw.

14 Misc 3d 1219(A)                                                                                          Page 1

14 Misc.3d 1219(A), 836 N.Y.S.2d 486, 2007 WL 137114 (N.Y.Sup.), 2007 N.Y. Slip Op. 50088(U)
**(Cite as: 14 Misc.3d 1219(A))**

Long Island Conservatory, Ltd. v. Jin
N.Y.Sup.,2007.
(The decision of the Court is referenced in a table in the New York Supplement.)
Supreme Court, Nassau County, New York.
LONG ISLAND CONSERVATORY, LTD. d/b/a
Long Island Conservatory, Plaintiff,
v.
Jaisook JIN and Young Sik Han, Defendants.
No. 17331-06.

Jan. 19, 2007.

Michael W. Holland, Esq., Williston Park, for plaintiff.
Sawyer, Halpern & Demetri, Esqs., Garden City, for defendants.
Leonard B. Austin, J.
*1 Plaintiff Long Island Conservatory, Ltd. ("Conservatory") moves for a preliminary injunction enjoining the Defendants from violating the provisions of a restrictive covenant/covenant not to compete.

## BACKGROUND

Conservatory operates a music school in Albertson, New York.

Jin executed an "Independent Service Contract" ("Contract"), dated November 19, 2002, which contains the following provision:
"You agree not to instruct students obtained via LIC at any other place than facility provided by LIC. Further, you agree not to complete (*sic*) with LIC for said students personally or in affiliation with other entities in a 10-mile radius within a period of one year after termination of your contract with LIC. Any teacher found to have violated this portion of the contract would be charged $500. Per student taken by them from LIC.(*sic*)"

Defendant Jaisook Jin ("Jin") was a voice instructor at Conservatory from 2000 until September 12, 2006. Jin submitted a letter of resignation dated September 12, 2006 indicating that she was resigning from Conservatory's faculty effective as of September 1, 2006.

Jin provided voice instruction to 73 students during the Spring 2006 semester. Only two of those students enrolled in Conservatory for the Fall 2006 semester.

Upon leaving Conservatory, Jin and her husband, Defendant Young Sik Han ("Han") opened a music school in Mineola, New York.

Conservatory seeks a preliminary injunction enjoining Jin and/or Han from:
1. Providing voice lessons to former or current Conservatory students for a period of one year from the date of Jin's resignation;
2. Operating a music school within ten mile radius of Conservatory's location for a period of one year from the date of Jin's resignation;
3. Directing Jin and Han to account for all money received for voice lessons given to current or former Conservatory students;
4. Directing Jin and Han to return Conservatory's Master Class list for the Spring 2006 semester and the Lesson Cards of the 73 students for whom Jin provided voice lessons in the Spring 2006 semester;
5. Soliciting Conservatory's current students or interfering with Conservatory's business and good will with its students or their parents;
6. Soliciting Conservatory's employees or instructors;
7. Prohibiting Jin and Han from disclosing the names, addresses and telephone numbers or disclosing any other of Conservatory's confidential information, trade secrets or confidential property

## DISCUSSION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

14 Misc.3d 1219(A), 836 N.Y.S.2d 486, 2007 WL 137114 (N.Y Sup.), 2007 N.Y. Slip Op. 50088(U)
**(Cite as: 14 Misc.3d 1219(A))**

### A. Preliminary Injunction-Standard

The party seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) the Plaintiff will suffer irreparable harm in the absence of an injunction and (3) a balancing of the equities favors the granting of an injunction *Aetna Ins. Co v Capasso*, 75 N.Y.2d 860 (1990); *Doe v Axelrod*, 73 N.Y.2d 748 (1988); and *Olabi v Mayfield*, 8 AD3d 459 (2nd Dept.2004).

*2 The party seeking the preliminary injunction has the burden of establishing a *prima facie* entitlement to such relief. *Gagnon Bus Co., Inc. v. Vallo Transportation, Ltd*, 13 AD3d 334 (2nd Dept.2004); and *William M. Blake Agency, Inc v. Leon*, 283 A.D.2d 423 (2nd Dept.2001). A preliminary injunction will be granted only if there is a clear right to the relief upon the law and the undisputed facts. *JDOC Construction LLC v Balabanow*, 306 A.D.2d 318 (2nd Dept.2003); *Peterson v. Corbin*, 275 A.D.2d 35 (2nd Dept.2000); *Carman v. Congregation De Mita of New York, Inc*, 269 A.D.2d 416 (2nd Dept.2000); and *Anastasi v Majopon Realty Corp.*, 181 A.D.2d 706 (2nd Dept.1992).

### B. Covenant Not to Compete-Restrictive Covenant

Conservatory seeks to enjoin Jin from operating a music school in Mineola and from offering lessons to current and former Conservatory students. Conservatory asserts Jin and Han's operation of a music school in Mineola violates the provision of the Contract which prohibit Jin from competing with Conservatory within a ten mile radius of Conservatory's facility for a period of one year from Jin's resignation. Conservatory asserts that Jin's providing voice lessons to students she taught while she was an instructor at Conservatory violates the provisions of the Contract which prohibit her from teaching Conservatory students at any place other than facilities provided by Conservatory.

New York has a strong public policy against enjoining a person from engaging in one's chosen profession. See, *Columbia Ribbon & Carbon Mfg.*

*Co. v A-1-A Corp.*, 42 N.Y.2d 496 (1977); and *Reed Roberts Assocs. v. Strauman*, 40 N.Y.2d 303 (1976). Such a restrictive covenant or covenant not to compete will be enforced provided that it is reasonably limited in time and geography and only to the extent necessary to protect the former employer from unfair competition stemming from the use or disclosure of trade secrets or confidential information or customer lists. *Millbrandt & Co, Inc v. Griffin*, 1 AD3d 327 (2nd Dept.2003); and *IVI Environment, Inc v McGovern*, 269 A.D.2d 497 (2nd Dept.2000).

The reasonableness of a restrictive covenant must be determined based upon the particular facts and circumstances relating to the agreement. *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382 (1999); and *Karpinski v Ingrasci*, 28 N.Y.2d 45 (1971).

A covenant against competition will be strictly construed and will not be extended beyond the literal meaning of its terms. *Elite Promotional Marketing, Inc v Stumacher*, 8 AD3d 525 (2nd Dept.2004).

The restrictive covenant provisions of Jin's employment contract do not prevent her from operating a music school or giving music or voice lessons to students who were not her students while she was a member of Conservatory's faculty. The Contract prohibits Jin from (1) instructing students of Conservatory at any location other than a facility provided by Conservatory and (2) competing for Conservatory students personally or in affiliation with other for a period of one year and within a radius of 10 miles of Conservatory's facilities from the date of her termination.

*3 Since the express terms of the Contract do not prohibit Jin from operating a music school, the Court cannot enjoin Jin and Han from operating a music school in Mineola.

If the Contract simply prohibited Jin from providing voice lessons to Conservatory students for a period of one year within a ten mile radius of Conservatory's facilities, the Court could issue a preliminary injunction enjoin her from providing lessons to Conservatory students. However, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

14 Misc.3d 1219(A) Page 3

14 Misc.3d 1219(A), 836 N.Y.S.2d 486, 2007 WL 137114 (N.Y.Sup.), 2007 N.Y. Slip Op. 50088(U)
**(Cite as: 14 Misc.3d 1219(A))**

restrictive covenant provides that a teacher violating this provision will be charged $500 per student taken.

This is a liquidated damage provision which fixes a teacher's liability to Conservatory should a teacher provide instruction to a Conservatory student in violation of the restrictive covenant. See, *Truck Rent-A-Center, Inc v. Puritan Farms 2nd, Inc*, 41 N.Y.2d 420 (1977). Liquidated damages provisions are enforceable provided that the damages are not unconscionable are in violation of public policy. *Id.*; See also, *JMD Holding Corp v. Congress Financial Corp.*, 4 NY3d 373 (2005). Liquidated damage provisions contained in restrictive covenants or covenants not to compete are enforceable provided that "... the agreed upon amount is not grossly disproportionate to the anticipated probable harm." *BDO Seidman v. Hirshberg, supra* at 396. Neither Jin nor Conservatory assert the liquidated damages provision is unconscionable or violative of public policy.

If this provision of the Contract is not viewed as a liquidated damages clause, then the provision would have to viewed as an unenforceable penalty. See, *Truck Rent-A-Center, Inc v. Puritan Farms, 2nd Inc., supra*; and *Ann-Par Sanitation, Inc v. Town of Brookhaven*, 23 AD3d 380 (2nd Dept 2005).

The law favors an interpretation which renders the agreement legal and enforceable rather than one that renders it illegal or unenforceable. 22 N.Y. Jur2d *Contracts* § 219. "An agreement will not be adjudged to be illegal when it is capable of a construction which will uphold and make it valid." *Lorillard v. Clyde*, 86 N.Y. 384 (1881), see also, *Friedman v. State of New York*, 242 App. Div. 314 (3rd Dept.1934); and 22 N.Y. Jur2d *Contracts § 219*

This provision clearly establishes and limits Jin's liability for violating the restrictive covenant/covenant not to compete provisions to the Contract to $500 per student.

Since Conservatory included a liquidated damages provision in the restrictive covenant it drafted, it can be fully compensated by an award of money damages in accordance with the liquidated damages clause. See, *BDO Seidman v. Hirshberg, supra* A party which can be fully compensated by money damages has not sustained irreparable harm thus precluding preliminary injunctive relief. *Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*, 94 N.Y.2d 541 (2000); and *1659 Ralph Ave Laundromat Corp v. Ben David Enterprises*, LLC, 307 A.D.2d 288 (2nd Dept.2003).

*4 For the foregoing reasons, Conservatory's request for a preliminary injunction enjoining Defendants from operating a music school in Mineola or from giving voice lessons to Conservatory students must be denied.

C. *Proprietary Information*

Conservatory seeks to compel Jin and Han to return the Master Class Schedule for the Spring 2006 Semester and the Lesson Cards for the 73 Conservatory students Jin provided voices lessons to in the Spring 2006 semester.

A customer list will be treated as a trade secret where the names and addresses of the customer are not known in the trade or can be obtained only through extraordinary effort. *Stanley Tulchin Assoc., Inc v. Vignola*, 186 A.D.2d 183 (2nd Dept.1992); and *Greenwich Mills Co Inc v. Barrie House Coffee Co*, 91 A.D.2d 398 (2nd Dept.1983). This is especially true where the customers' patronage has been secured through years of effort and advertising involving a substantial expenditure of time and money. *Leo Silfen, Inc v. Cream*, 29 N.Y.2d 387 (1972); and *WMW Machinery Co. Inc v. Koerber AG*, 240 A.D.2d 400 (2nd Dept.1997).

Trade secret protection will not be accorded to customer lists where the names and addresses of the customers are readily ascertainable. *Leo Silfen, Inc. v. Cream, supra*, and *Atmospherics Ltd v. Hansen*, 269 A.D.2d 497 (2nd Dept.2000).

A trade secret or confidential information includes a compilation of information which is used in one's business and which gives the possessor of the information a competitive advantage over one's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

14 Misc.3d 1219(A)  Page 4

14 Misc.3d 1219(A), 836 N.Y.S.2d 486, 2007 WL 137114 (N.Y.Sup.), 2007 N.Y. Slip Op. 50088(U)
**(Cite as: 14 Misc.3d 1219(A))**

competitors who do not possess this information. *Ashland Management Inc v Janien*, 82 N.Y.2d 395 (1993); and *Eagle Comtronics, Inc v Pico, Inc.*, 89 A.D.2d 803, (4th Dept.1982). In determining whether information is a trade secret, the court should consider:
"(1) the extent to which the information is known outside of [the] business;
(2) the extent to which it is known by employees and others involved in [the] business;
(3) the extent of measures taken by [the business] to guard the secrecy of the information;
(4) the value of the information to [the business] and [its] competitors;
(5) the amount of effort and money expended by [the business] in developing the information;
(6) the ease or difficulty with which the information could be properly acquired or duplicated by others." Restatement of Torts, § 757, comment b.

See also, *Ashland Management, Inc. v. Janien*, *supra*; and *Eagle Comtronics, Inc v Pico, Inc*, *supra*

The Master Class Schedule and the Lesson Cards are Conservatory's customer list. Conservatory asserts its Master Class Schedule contains the name, address and telephone number of each student and the date and time for each student's class instruction. The information contained in the Master Class Schedule is prepared by a school administrator and is available to six other school administrator's. The Master Class Schedule provided to Jin provided her with the names and phone numbers of her students. This information is provided to her solely for her use in connection with her duties as an instructor. Only one copy of the Master Class Schedule is prepared which is kept in the administration office. The information contained on the Master Class Schedule is not available to other students, their parents or the general public. The Master Class Schedule provided to Jin contains the aforementioned information relating to students assigned to her for instruction during the semester.

*5 A Student Lesson Card ("Card") was provided to Jin for each student assigned to her for instruction in the Spring 2006 semester. The Card contains the student's name, the instructor's name, the commencement date for instruction, a record of payment for lessons and a space for the student to sign to acknowledge that lesson had been given. The Card is Conservatory's sole record of voice lessons provided to each student, the lessons yet to be provided and the payment received for the lessons. Conservatory maintains only one lesson card per student.

On September 6, 2006, one of Conservatory's administrators discovered that Jin's Master Class Schedule and Card's for the Spring 2006 semester were missing. Upon learning these items were missing, Conservatory demanded their immediate return.

Defendants ultimately returned only two Cards. They did not return Jin's Master Class Schedule.

Jin disputes Conservatory's assertion the Cards contain proprietary or confidential information. Jin asserts the only information on the Card was the student's name. She asserts the sole purpose of the Cards was confirm that lessons were held so the instructor could be paid.

Most Conservatory students pre-paid for a series of lessons before the lessons began. However, the instructors would be paid for the lessons only after the lesson was held.

Jin's Contract provided that she was paid on an hourly basis upon the completion of lessons. In order to obtain payment for the lessons she gave, Jin would have the student or the student's parent would sign or initial the Card at the end of each lesson acknowledging the lesson had been completed. She would then use the signed Cards as a means for obtaining payment.

Jin further contests Conservatory's assertion that it had only one Card per student and that it was kept in the administration's office.

She avers that a copy of the lesson card would be given to the student when a series of lessons had been completed. She also kept a copy for her own records and for accounting purposes. She asserts Conservatory never demanded that she return her

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

14 Misc.3d 1219(A) Page 5

14 Misc.3d 1219(A), 836 N.Y.S.2d 486, 2007 WL 137114 (N.Y.Sup.), 2007 N.Y. Slip Op. 50088(U)
(Cite as: 14 Misc.3d 1219(A))

Cards after a series of lessons had been completed.

Jin claims she returned the Cards of students who had not completed their series of lessons to Conservatory so the students could obtain a refund for lessons not completed or obtain a credit towards future lessons.

Jin also disputes Conservatory's assertion that the Master Class List is confidential.

Jin claims that each semester Conservatory provided her with the names and telephone numbers of the students to whom she was to provide voice instruction. She would then prepare a handwritten list containing the name and telephone number of the student and the day and time of each student's lesson. Jin claims she needed this information to permit her to contact the students. She claims Conservatory never demanded she return the Master Class Schedule.

Jin further asserts a copy of the Master Class Schedule was kept at the receptionist's desk in the center of Conservatory where students, their parents, other faculty members and administrators could access it.

*6 Solicitation of a business of a former employer's customers by a former employee is not actionable unless the customer list is a trade secret or there was a wrongful taking or copying of the former employers customer list. *Amana Express International, Inc v Pier-Air International, Ltd.*, 211 A.D.2d 606 (2nd Dept.1995). The Master Class List is a trade secret. The names and telephone numbers of the students enrolled in Conservatory cannot be obtained from outside sources. The information contained on the Class List is available to a limited number of Conservatory Administrators and the instructor. Instructors have only the information relating to students to whom they are to provide instruction.

The information is extremely valuable to a competitor and could not be easily duplicated. Without this information, Jin and Han would have had no way to determine who was taking voice lessons at Conservatory. The information on the list gave Jin and Han a source from which to solicit business for their new music school that would otherwise be unavailable and unobtainable.

Conservatory takes reasonable measures to protect the information. The information is available to a limited number of administrators and the instructor. The information is provided to the instructor as needed to permit the instructor to provide lessons.

Ordinarily, Plaintiff would be able to enjoin Defendants from using this information. However, in this case, the Contract between Conservatory and Jin provides that Jin is to be charged $500 for each violation of the provisions of the restrictive covenant/covenant not to compete provisions of the Contract.

One who can be fully compensated with money damages has not demonstrated that they have or will sustain irreparable harm in the absence of a preliminary injunction. *Credit Agricole Indosuez v Rossiyskiy Kredit Bank, supra,* and *1659 Ralph Ave. Laundromat Corp v Ben David Enterprises, supra.* Since Conservatory can be fully compensated for the misappropriation of its confidential information by an award of damages in accordance with Jin's Contract, its application for a preliminary injunction seeking to enjoin Jin and Han from using the information contained on the Cards and the Master Class Schedule and seeking to compel Jin and Han to return the Cards and Master Class Schedule must be denied.

Conservatory also seeks to enjoin Jin and Han from divulging this information to others. Conservatory is entitled to a preliminary injunction in this regard. Conservatory's class lists are confidential information. Jin and Han are permitted to retain and use this information because of the unusual circumstances surrounding this case. However, permitting them to divulge this information to third parties would provide those third parties with information they would otherwise be unable to obtain. See, *Leo Silfen, Inc v Cream, supra.* Therefore, Jin and Han shall be enjoined from divulging any information on the Master Class Schedule or Cards to any one outside their Mineola facility.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

14 Misc.3d 1219(A)                                                                                                    Page 6
14 Misc.3d 1219(A), 836 N.Y.S.2d 486, 2007 WL 137114 (N.Y.Sup.), 2007 N.Y. Slip Op. 50088(U)
**(Cite as: 14 Misc.3d 1219(A))**

### D. Soliciting Employees

*7 Conservatory seeks to enjoin Jin and Han from soliciting its employees to work at their music school.

This request for relief must be denied. Conservatory has failed to place before the Court any evidence that Jin or Han have solicited any Conservatory employees to work at their music school. Since Conservatory has failed to establish that Jin or Han have engaged or are engaging in such conduct, there is no basis for granting such relief.

### E. Money Damages

This matter, which was commenced as a special proceeding, has been converted into an action for damages pursuant to CPLR 103(c). The damages, if any, to be awarded to Conservatory is an ultimate issue which will be decided at trial.

### F. Bond

CPLR 6312(b) requires the Court to fix an undertaking in an amount sufficient to compensate Defendants for damages sustained should it be determined that the preliminary injunction was improvidently granted. See, *Magolies v Encounter, Inc.*, 42 N.Y.2d 475 (1977); and *Schwartz v Gruber*, 216 A.D.2d 526 (2nd Dept.1999).

Given the limited nature of the injunctive relief being granted, a bond in the sum of $1,000 is sufficient.

Accordingly, it is,

**ORDERED,** that Plaintiff's motion for a preliminary injunction is granted to the extent that the Defendants are enjoined from divulging to third parties any information contained on the Master Class List and/or the Lesson Cards for a period of one year commencing on September 12, 2006, and is in all other respects **denied**; and it is further,

**ORDERED,** that Plaintiff shall post a bond in the sum of $1,000 in escrow with its attorney, by depositing such sum with the County Clerk or by posting a surety bond in such sum within ten (10) days of the date of this order. In the event, Plaintiff fails to comply herewith, the motion is **denied;** and it is further

**ORDERED,** that counsel for the parties are directed to appear for a status conference on February 22, 2007 at 9:30 a.m.

This constitutes the decision and order of this Court.

N.Y.Sup.,2007.
Long Island Conservatory, Ltd. v. Jaisook Jin
14 Misc.3d 1219(A), 836 N.Y.S.2d 486, 2007 WL 137114 (N.Y.Sup.), 2007 N.Y. Slip Op. 50088(U)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.