Judge Pauley   07 cv 7357

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

U.S. TRUST COMPANY, N.A.,

        Plaintiff,

-against-

ROBERT S. STOLAR,

        Defendant.

Civil Action No.

---

**DECLARATION OF HENRY FISCHEL-BOCK
IN SUPPORT OF U.S. TRUST COMPANY'S MOTION FOR EXPEDITED DISCOVERY**

---

GIBBONS P.C.
One Pennsylvania Plaza
New York, New York 10119-3701
(212) 613-2000

-and-

COSS & MOMJIAN, LLP
111 Presidential Blvd., Suite 233
Bala Cynwyd, Pennsylvania 19004
(610) 667-6912

Attorneys for Plaintiff

#1220035 v1
104768-60458

## DECLARATION OF HENRY FISCHEL-BOCK

I, Henry Fischel-Bock, state as follows:

1. Prior to July 1, 2007, I was employed as the Head of the Multi-Family Office ("MFO") for United States Trust Company, N.A. ("US Trust"). Effective July 1, 2007, Bank of America Corporation ("BAC") acquired US Trust's parent, US Trust Corporation ("USTC"), for approximately $3.3 billion dollars. Effective with the merger, I have been employed as a Managing Director for Private Wealth Management-Special Client Solutions for Bank of America Private Bank. The following statements are based on my personal knowledge, except where it is indicated that the statements are made on the basis of information and belief. I make this Declaration in support of the motion for expedited discovery in aid of a preliminary injunction filed by US Trust.

2. The Defendant was a former high level employee at US Trust. Specifically, the Defendant was the Principal for the Western Region of US Trust's MFO. MFO teams are devoted to servicing affluent and ultra-high net worth clients. In 2006, US Trust's Western Region MFO - supervised by the Defendant - generated approximately $10 million in revenues for US Trust.

3. The Defendant resigned without notice on June 28, 2007 to join Morgan Stanley DW, Inc. ("Morgan Stanley").

4. The Defendant signed a contract with US Trust containing, among other things, his commitment not to solicit US Trust employees or clients and to maintain the confidentiality of US Trust's client information. (A copy of the Defendant's contract is attached as Exhibit "A").

1

5. Nonetheless, within just two weeks of the Defendant's sudden resignation, three other US Trust employees who had worked with or for the Defendant resigned without notice to join him at Morgan Stanley. One of these employees, Christine Guidera, resigned at virtually the same time as the Defendant. The other two, Morris Noble and Stacey Pugsley, resigned within approximately two weeks of the Defendant's resignation.

6. Prior to the Defendant's resignation, there were approximately ten employees in the Western Region MFO. The Defendant was a Managing Director and supervised the Western Region. Guidera also was a Managing Director in the Western Region. Noble and Pugsley both were Senior Vice Presidents. Noble was a portfolio manager and Pugsley was largely responsible for operations.

7. Then, on August 16, the third Managing Director from the Western Region MFO, Susan Pilcher, also resigned to join Morgan Stanley. Now, all that remains of US Trust's Western Region MFO are several administrative personnel. As a result of these mass departures, the Western Region of US Trust's MFO has been decimated. In addition, at the same time the Defendant resigned, Mary Davey (a Managing Director for US Trust's MFO working out of New York) resigned as well to join Morgan Stanley and – as I understand it – is working with the Defendant.

8. It is clear to me that the mass exodus of key US Trust employees from the Western Region MFO was carefully planned and orchestrated. The Defendant hired a lawyer before resigning and listed the identity of his lawyer in his resignation letter. Indeed, Davey identified this same lawyer in her resignation letter.

9. Although the Defendant also agreed not to solicit US Trust clients, since the Defendant resigned, numerous US Trust clients have indicated they will be moving their assets to Morgan Stanley. In addition, US Trust clients also have called and requested that their account information be sent directly to Morgan Stanley.

10. In fact, as described below, <u>over two months before resigning</u>, the Defendant emailed Morgan Stanley a US Trust Emerging Markets presentation. This presentation was proprietary to US Trust, was in no way intended for any competitor of US Trust and contains (among other information) model client asset allocations.

11. Certainly, in emailing this US Trust Emerging Markets presentation to a direct competitor, the Defendant was not acting in the best interests of US Trust. To the contrary, the Defendant was acting only in the interests of himself and Morgan Stanley and breached his duty of loyalty to US Trust.

12. In his contract, the Defendant also agreed to a preliminary injunction to enforce his promises pending arbitration <u>and</u> to expedited discovery. Based upon the Defendant's abrupt resignation, the carefully orchestrated resignations of numerous other US Trust employees, the loss of US Trust client assets, and the emailing of confidential and proprietary US Trust business information by the Defendant to Morgan Stanley before he resigned, it is clear to me that the Defendant has violated his legal obligations to US Trust.

13. It is imperative that US Trust be granted leave to conduct expedited discovery – <u>as the Defendant explicitly agreed in his contract</u> – in aid of its application for a preliminary injunction pending arbitration.

3

### A. The Defendant's Role At US Trust

14. US Trust is a financial services company that offers fully integrated wealth management solutions, including investment management, planning services, and trust services.

15. US Trust maintains offices throughout the country. US Trust invests substantial resources to grow and maintain its various offices.

16. As the Principal of US Trust's Western Region MFO, the Defendant was the person most directly responsible for the overall success of the region, and for supervising the employees working within the Western Region. Now, all the senior employees have resigned to work with the Defendant at Morgan Stanley.

17. In his capacity as Principal of the Western Region MFO, the Defendant was intimately familiar with US Trust clients responsible for generating millions of dollars in annual revenues for US Trust. In fact, the Defendant had personal contact with many (and perhaps most) of the US Trust clients serviced by US Trust's Western Region MFO.

18. As of late June 2007, US Trust's Western Region MFO was highly successful. As I noted earlier, all that currently remains of US Trust's Western Region MFO are several administrative personnel. In a span of less than two months, it was decimated.

19. By contrast, Morgan Stanley has benefited tremendously from this exodus of US Trust employees. The Defendant, to my understanding, is now working in New York City and supervising the same employees who used to work for him at US Trust.

### B. US Trust's Trade Secrets

20. US Trust serves affluent and ultra-high net worth clients. The US Trust clients to whom the Defendant had access invest millions of dollars with US Trust and, in numerous instances, have tens of millions of dollars in assets.

21. The assets, financial holdings and other information relating to US Trust's clients are highly proprietary to US Trust. US Trust expends substantial sums to attract and service its clients. For example, US Trust spends a significant amount of money to advertise nationally in an effort to generate name recognition and goodwill.

22. US Trust also closely guards its client information. In the case of the Defendant, he signed an explicit contract in which he agreed to maintain the confidentiality of client information. In addition, US Trust protects client information in other ways such as assigning confidential passwords to limit access to client information.

23. Similarly, the Defendant also agreed to comply with the US Trust Code of Business Conduct and Ethics in which he further agreed to "maintain the confidentiality of all information", not to "take the Firm's assets or use them for your personal gain", and to "safeguard proprietary information of the firm." (Exhibit "B").

### C. Discovery Is Critical

24. US Trust has deep concerns that the Defendant has violated his contractual and other legal obligations in potentially many respects. As a threshold matter, the Defendant's resignation on June 28 took place virtually simultaneous with the sudden resignations of Mary Davey and Christine Guidera.

25. Then, within only a couple of weeks, Noble and Pugsley both resigned without any advance notice whatsoever. Noble, in fact, told one of my colleagues (Tracey

5

Warson) that he was "exploring a couple of opportunities" and going "on vacation", only to turn up at Morgan Stanley. All these departures were followed by the sudden resignation of Susan Pilcher, another Managing Director in the Western Region MFO, who also has gone to Morgan Stanley.

26. Equally troubling, I have been advised that, around a week before resigning, Noble asked a recently-hired employee to print out reports on US Trust clients containing these clients' total assets, a breakdown of their financial holdings by category (domestic equity, international equity, domestic fixed income, international fixed income, tangible assets, reits, and cash equivalents), as well as a comparison of their market performance by segment at US Trust against numerous other market indices.

27. The information on these client reports is highly confidential and extremely valuable to US Trust. Also, the confidential information Noble appears to have removed related to the US Trust clients serviced by the Western Region MFO supervised by the Defendant.

28. This information falling into the hands of a competitor is extremely damaging to US Trust. In fact, the Defendant and other employees at Morgan Stanley are far better equipped to divert the business of US Trust clients by knowing their exact holdings at US Trust. They now will be able to target US Trust clients with specific, proprietary and confidential knowledge of clients' exact holdings.

29. Information concerning client assets and investments also is highly sensitive and was entrusted to US Trust with the expectation of privacy. The clients serviced by US Trust's Western Region MFO are affluent and ultra-net worth clients and place an extremely

6

significant premium on maintaining the strictest confidentiality of their sensitive financial affairs.

30. As set forth previously, over two months before resigning, the Defendant also emailed to Morgan Stanley a US Trust Emerging Markets presentation. Based upon the removal of highly confidential client information by an employee working for the Defendant and the Defendant's own emailing of this Emerging Markets presentation to Morgan Stanley prior to his resignation, I am extremely concerned the Defendant (and/or the employees working with him) has possession of highly confidential and proprietary US Trust client and business information.

31. Expedited discovery also is imperative so that US Trust can determine to what extent the Defendant may have violated and may be continuing to violate his other obligations, including his promises not to solicit co-employees and clients.

I hereby verify under penalty of perjury that the foregoing statements in this Declaration are true and correct. I understand this verification is subject to the penalties of 28 U.S.C. Section 1746.

Executed this 17th day of August, 2007 at Miami, Florida.

*[signature]*
Henry Pischel-Bock

# EXHIBIT A

## Employment Agreement Regarding
## Confidentiality and Non-Solicitation

In consideration of your participation in The Charles Schwab Corporation Long Term Incentive Plan and The Charles Schwab Corporation 2004 Stock Incentive Plan, as well as your employment by U.S. Trust Corporation and its subsidiaries ("U.S. Trust") and in consideration of the compensation, resources, benefits and the trade secrets and proprietary information that will be provided to you by U.S. Trust in connection with your employment, you agree as follows:

1. **Confidential and Proprietary Information.**

In connection with your employment by U.S. Trust you will have (and you hereby acknowledge you have) access to sensitive, non-public information of U.S. Trust and its clients including, but not limited to: a) client-related information (i.e. client names, client contact information, client lists, client account contents and statements, investment, estate and taxation strategies, current and historical investment performance data, etc.) b) employee, vendor and independent contractor information (i.e. names and contact information, personal and financial information, services, compensation, rate structures etc.) and c) business information of U.S. Trust (i.e. financial performance, marketing, sales, product and regulatory information etc.) (collectively "Confidential and Proprietary Information"). You agree that you will not disclose or permit or facilitate disclosure of Confidential and Proprietary Information to persons outside U.S. Trust or use such information for purposes other than as specifically authorized by U.S. Trust for purposes intended by U.S. Trust.

2. **Non-Solicitation of Clients and Employees.**

To further protect Confidential and Proprietary Information of U.S. Trust and the good will associated with the client and prospective client relationships of U. S. Trust, you agree that:

    a) during your employment with U.S. Trust, and for a period of twelve (12) months following termination of your employment with U.S. Trust, you will not, directly or indirectly, solicit or induce existing or prospective U.S. Trust clients, to whom you provided services or with respect to whom you devoted efforts seeking to provide such services, to transfer or divert business from U.S. Trust or otherwise to avoid, diminish or discontinue a relationship with U.S. Trust and

    b) during your employment with U.S. Trust, and for a period of twelve (12) months following termination of your employment with U.S. Trust, you will not, directly or indirectly, solicit, induce or encourage any U.S. Trust employee to terminate employment with U.S. Trust to join a business competitive with the businesses of U.S. Trust.

1247272.1

### 3. Return of Records

Immediately upon termination of your employment with U.S. Trust, you agree to return all Confidential and Proprietary Information in your possession, custody and control to U.S. Trust and provide a sworn certification attesting that you have done so.

### 4. Arbitration

Any dispute or claim arising out of, based upon or relating to this Agreement will be settled and finally determined by arbitration. Arbitration will be conducted before the American Arbitration Association. You further agree that, notwithstanding your agreement to arbitrate, in connection any breach or threatened breach of this Agreement, U.S. Trust may proceed first to any federal or state court of competent jurisdiction to seek temporary or preliminary injunctive relief to enforce the provisions of this Agreement in aid or support of the arbitration proceeding. An application before a court for injunctive relief shall not be construed as a waiver, by either party, of the right or obligation of the parties to resolve claims through arbitration. In the event of a breach by you of Section 2a) or 2b) of this Agreement, you agree that, in addition to all other legal and equitable remedies available to U.S. Trust, U.S. Trust shall be entitled to, as liquidated damages, and not as a penalty, an amount equal to the greater of a) the revenue received by U.S. Trust during the twelve month period immediately proceeding the termination of your employment with U.S. Trust from each client you served at U.S. Trust who has transferred or diverted business from U.S. Trust to you or to any entity with whom you have become associated or b) the revenue received by you or by any entity with whom you may be associated for the twelve month period following termination of your employment with U.S. Trust from each client you served at U.S. Trust.

### 5. Discovery

You agree that should U.S. Trust seek temporary or preliminary injunctive relief with regard to the breach or threatened breach by you of this Agreement, U.S. Trust shall be entitled to expedited discovery including depositions, whether or not the laws of the jurisdiction or applicable arbitration rules provide for such expedited discovery.

### 6. Choice of Law

This agreement shall be governed by and construed in accordance with the laws of the State of New York without reference to the principles of conflicts of law.

### 7. Severability

If any provision of this Agreement is found to be invalid or unenforceable, that provision or portion thereof shall be enforced to the maximum extent possible, and the remaining provisions or portions thereof shall remain in full force and effect.

### 8. Attorneys Fees and Costs

1247272.1

In the event that a party to this Agreement brings an action to enforce any provisions of the Agreement, the prevailing party shall be entitled to its attorneys' fees and costs incurred to enforce such claims.

### 9. Reconciliation with Other Agreements

This Agreement is intended to be supplemental to, and not supersede any employment agreement or other agreement that you may have entered into previously with U.S. Trust. If a provision in this Agreement conflicts with or is inconsistent with any provision in such previous agreement, you agree that the provision that is most favorable to U.S. Trust (in U.S. Trust's sole determination) shall control.

Nothing herein shall be deemed to waive and/or release you from your obligations to comply with the U.S. Trust Corporation Code of Business Conduct and Ethics and all other applicable Policies and Procedures of U.S. Trust, familiarity with which you hereby acknowledge. Further, nothing in this Agreement changes your "at will" employment status, and that either you or U.S. Trust may end the employment relationship at any time, with or without notice, for any reason or for no reason at all.

_9/7/04_
Date

_[signature]_
Employee Signature

_Robert Stoler_
Employee Name

_____
Date

_____
U.S. Trust Entity Name

_____
By:
Its:

1247272.1

# EXHIBIT B

For Internal Use Only

# U.S. TRUST CORPORATION
# CODE OF BUSINESS CONDUCT AND ETHICS

Effective November 7, 2006

### MISSION STATEMENT

To be an organization that directly impacts and influences the future of our clients, their children and grandchildren.

Our success will be determined by delivering top tier performance and innovation that is unbiased and in the best interest of our clients, our colleagues and our investors.

### OUR VISION

Be the premier wealth management and investment firm in the nation.

### OUR VALUES

Be fair, empathetic and responsive in serving our clients.
Respect and reinforce our fellow employees and the power of teamwork.
Strive relentlessly to innovate what we do and how we do it.
Always earn and be worthy of our clients' trust.

U.S. TRUST                                                                 Page 1

THE CODE OF BUSINESS CONDUCT AND ETHICS                               U.S. Trust Corporation

For Internal Use Only

### Confidentiality of Information

*Confidentiality of Client Information*

As a financial services firm, we have particular responsibilities for safeguarding the information of our clients and the proprietary information of our Firm. You should be mindful of this obligation when you use the telephone, fax, electronic mail, and other means of storing and transmitting information. You should not discuss confidential information in public areas where it can be overheard, read confidential documents in public places, nor leave or discard confidential documents where they can be retrieved by others. You should not discuss the affairs of the Firm with anyone except on a need-to-know basis. This includes family members and anyone at any other firm you may be associated with or transact business with on behalf of U.S. Trust. *If you have questions, you should contact the Corporate Compliance Division or the Office of the General Counsel.*

*Privacy of Client Information*

U.S. Trust is committed to safeguarding its clients' privacy. We do not sell any personally identifiable client information. Sharing of such information with third parties is limited to situations related to the processing and servicing of client accounts, and to specifically delineated exceptions in the applicable privacy law. We share information with our affiliates as allowed by applicable law. You must be familiar with the Firm's Privacy Policy and with the procedural and systemic safeguards we maintain to protect this information and must report any breaches of these safeguards in accordance with the Firm's procedures.

Within U.S. Trust, information concerning the identity of clients and their transactions and accounts must always be handled with care. Such information may not be disclosed to persons within the Firm unless they need to know it in order to fulfill their responsibilities to the Firm.

*If you have questions regarding the appropriateness of any situation involving information handling, you should review the Firm's Privacy Policy as well as the Information Security Policy or contact your supervisor or the Privacy Officer.*

*Protection and Use of Proprietary Information of the Firm*

You have the responsibility to safeguard proprietary information of the Firm. Proprietary information includes but is not limited to intellectual property (copyrights, trademarks or patents or trade secrets), particular know-how (business or organizational designs, or business, marketing or service plans or ideas) and sensitive information about the Firm (databases, records, client-related information, salary information or unpublished financial reports). *Any suspected breach of this obligation should be reported immediately to the Corporate Compliance Division and, if you are an employee, to your supervisor.*

THE CODE OF BUSINESS CONDUCT AND ETHICS                                  U.S. Trust Corporation

                                                                         For Internal Use Only

*Protection and Use of Physical Assets of the Firm*

You are obligated to protect the Firm's assets and ensure their efficient use. Theft, carelessness and waste have a direct impact on the Firm. Firm equipment should not be used for non-Firm business, though incidental personal use may be permitted. All business resources and equipment provided to you by the Firm remain the property of U.S. Trust and should be used for its benefit. The Firm has the right to examine your use of this property, including the contents of the desktop and/or laptop computer assigned to you, your use of all communications devices and any furniture or filing facilities used by you. Under no circumstances may you use the Firm's systems to view, store or send unlawful, offensive or other inappropriate materials. These standards apply to all types of electronic and non-electronic communications, including, but not limited to, telephones, voice-mail, pagers, fax machines, e-mail, instant messaging, text messaging and on-line services. You should have no expectation of privacy or confidentiality regarding your activities while on the premises of, or when using the facilities or systems of, U.S. Trust even though you may use security features such as personal passwords. *Any suspected breach of this obligation should be reported immediately to the Corporate Compliance Division and, if you are an employee, to your supervisor.*

*Monitoring of Communications*

All electronic communications relating to Firm business must be made through the Firm's network unless the Office of the General Counsel has expressly authorized another means of communication. All means of communications are the property of the Firm and are subject to monitoring and surveillance.

## Business Conduct and Ethics
## BC&E Form Details

*Employee* Robert Stolar          *Form Version:* 2 09/18/2006          **Status:** Accepted By System

- **Section 1. Managers**
    Manager Henry Fischel-Bock          Policy Committee Member Frances Aldrich Sevilla-Sacasa
    Section 2. Questionnaire

| | | |
|---|---|---|
| No | 1. | Are you seeking approval to hold a position, whether paid or unpaid, with any organization other than U.S. Trust? |
| No | 2. | Are you seeking approval to make a significant investment in a company that competes with U.S. Trust or in an entity that does business with U.S. Trust? (more) |
| No | 3. | Are you seeking approval to borrow money from a client or employee of U.S. Trust? |
| No | 4. | Are you seeking approval to accept a corporate or fiduciary appointment (including authority to act as Power of Attorney, Trustee, Executor or Guardian) for yourself personally? (more) |
| No | 5. | Are you seeking approval to engage in significant political activity, seek or accept public office or make a political contribution on behalf of U.S. Trust? (more) |
| No | 6. | Are you seeking approval to give or receive a gift in excess of $100? (more) |
| No | 7. | Have you made any gifts, payments of money, or provided anything of value, directly or indirectly, to or for the benefit of anyone related to a union or a union plan? Please exclude gifts, payments or anything of value that has been disclosed previously. |
| No | 8. | Were there any instances in which a union-related recipient received preferential treatment (including fee concessions, advantageous terms on a loan or investment)? Please exclude instances that have been disclosed previously. |
| No | 9. | Are you aware of any other personal circumstances that would conflict, or might conflict, with the interests of U.S. Trust or its clients? |
| No | 10. | Within the past ten years has any credit obligation for which you personally (or any organization, including any broker/dealer during any time while you exercised control over such organization) were responsible for payment, been referred to a professional debt-collecting firm for collection thereof? |
| No | 11. | Has your authorization to act as an attorney, accountant or federal contractor ever been revoked or suspended? |
| No | 12. | Have you ever been convicted of or plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any felony? |
| No | 13. | Based upon activities that occurred while you exercised control over it, has an organization ever been convicted of or plead guilty or nolo contendere ("no contest") in a domestic, foreign or military court to any felony? |
| No | 14. | Based upon activities that occurred while you exercised control over it, has an organization ever been convicted of or pled guilty or nolo contendere ("no contest") in a domestic or foreign court to a misdemeanor specified in the question above? |

Has the U.S. Securities and Exchange Commission or the Commodity Futures Trading Commission ever --

| | | |
|---|---|---|
| No | 15. | -- found you to have made a false statement or omission? |
| No | 16. | -- found you to have been a cause of an investment-related business having its |

|  |  | authorization to do business denied, suspended, revoked or restricted? |
|---|---|---|
| No | 17. | — entered an order against you in connection with investment-related activity? |
| No | 18. | — ever imposed a civil money penalty on you, or ordered you to cease and desist from any activity? |

**Has any other Federal regulatory agency or any state regulatory agency or foreign financial regulatory authority ever—**

| No | 19. | — found you to have made a false statement or omission or been dishonest, unfair or unethical? |
|---|---|---|
| No | 20. | — found you to have been involved in a violation of investment-related regulations or statues? |
| No | 21. | — found you to have been a cause of an investment-related business having its authorization to do business denied, suspended, revoked or restricted? |
| No | 22. | — entered an order against you in connection with investment-related activity? |
| No | 23. | — denied, suspended or revoked your registration or license, or otherwise, by order, prevented you from associating with an investment-related business or restricted your activities? |

**Has any self-regulatory organization or commodities exchange ever:**

| No | 24. | — found you to have made a false statement or omission? |
|---|---|---|
| No | 25. | — found you to have been involved in a violation of its rules (other than a violation designated as a "minor rule violation" under a plan approved by the U.S. Securities and Exchange Commission)? |
| No | 26. | — found you to have been a cause of an investment-related business having its authorization to do business denied, suspended, revoked or restricted? |
| No | 27. | — disciplined you by expelling or suspending you from membership, barring or suspending your association with its members, or restricting your activities? |

**Have you been notified, in writing, that you are now the subject of:**

| No | 28. | — any regulatory complaint or proceeding that could result in a "yes" answer to any question above? |
|---|---|---|
| No | 29. | — any investigation that could result in a "yes" answer to any question above? |

**Has any domestic or foreign court**

| No | 30. | — ever enjoined you in connection with any investment-related activity? |
|---|---|---|
| No | 31. | — ever found that you were involved in a violation of any investment-related statute(s) or regulation(s)? |
| No | 32. | — dismissed, pursuant to a settlement agreement, an investment-related civil action brought against you by a state or foreign financial regulatory authority? |
| No | 33. | — are you named in any pending investment-related civil action that could result in a "yes" answer to any of the 3 preceding questions? |

**Have you ever been named as a respondent/defendant in an investment-related, consumer-initiated arbitration or civil litigation which alleged that you were involved in one or more sales practice violations and which:**

| No | 34. | — is still pending? |
|---|---|---|
| No | 35. | — resulted in an arbitration award or civil judgment against you, regardless of amount? |
| No | 36. | — was settled for an amount of $10,000 or more? |
| No | 37. | Have you ever been the subject of an investment-related, consumer-initiated written complaint, not otherwise reported in any of the 3 preceding questions, which alleged that you were involved in one or more sales practice violations and which complaint was settled for an amount of $10,000 or more? |

**Within the past twenty-four (24) months, have you been the subject of an**

|   |   | Investment-related, consumer-initiated written complaint, not otherwise reported above, which |
|---|---|---|
| No | 38. | -- alleged that you were involved in one or more sales practice violations and contained a claim for compensatory damages of $5,000 or more (if no damage amount is alleged, the complaint must be reported unless the firm has made a good faith determination that the damages from the alleged conduct would be less than $5,000)? |
| No | 39. | -- alleged that you were involved in forgery, theft, misappropriation or conversion of funds or securities? |
|   |   | **Have you ever voluntarily resigned, been discharged or permitted to resign after allegations were made that accused you of:** |
| No | 40. | -- violating investment-related statutes, regulations, rules or industry standards of conduct? |
| No | 41. | -- fraud or the wrongful taking of property? |
| No | 42. | -- failure to supervise in connection with investment-related statutes, regulations, rules or industry standards of conduct? |
|   |   | **Within the past 10 years:** |
| No | 43. | -- have you made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition? |
| No | 44. | --based upon events that occurred while you exercised control over it, has an organization made a compromise with creditors, filed a bankruptcy petition or been the subject of an involuntary bankruptcy petition? |
| No | 45. | --based upon events that occurred while you exercised control over it, has a broker or dealer been the subject of an involuntary bankruptcy petition, or had a trustee appointed, or had a direct payment procedure initiated under the Securities Investor Protection Act? |
| No | 46. | Has a bonding company ever denied, paid out on, or revoked a bond for you? |
| No | 47. | Do you have any unsatisfied judgments or liens against you? |
|   |   | **Do you certify that:** |
| Yes | 48. | -- all of the information you have provided in response to the questions on this BC&E application is current and correct? |
| Yes | 49. | -- you have received, read, understand, and will abide by the provisions of the Code of Business Conduct and Ethics of U.S. Trust Corporation (the "Policy"), including the Information Asset Protection Policy (for those employees who have signed it), the U.S. Trust Compliance Manual and all other documents referenced in the Policy? |

## Section 3. Investment Accounts

| Institution Name | Account Name | Account Number | Exemption Obtained? |
|---|---|---|---|
| Charles Schwab & Co. | REDACTED |  | N/A |
| Charles Schwab & Co. |  |  | N/A |